**WAINWRIGHT–WEST OILS, Limited, et al., v. COOKE.**

No. 5044.

Court of Civil Appeals of Texas. Texarkana.

Feb. 16, 1937.

Rehearing Denied March 4, 1937.

Smith & West, of Henderson, for appellants.

Caves & Waldrop, of Henderson, for appellee.

HALL, Justice.

Appellee brought this suit against Wainwright-West Oils, Limited, and P. D. Bowlen, appellants, for 5 per cent. commission on the sale of a lease on certain oil lands situated in Rusk County, Tex. Appellee alleged: "That on or about July 16, 1934, defendants and plaintiff entered into a verbal agreement whereby this plaintiff was to secure information concerning oil-producing property in the East Texas Oil Field, that were for sale, and upon the terms and conditions same could be bought. This plaintiff was to furnish such information to these defendants and were to assist in closing such deals that could be made, and that were acceptable to these defendants. For this information so furnished by this plaintiff, plaintiff was to be paid the sum

of five per centum (5%) of the purchase price of all purchases made by these defendants of oil properties."

He alleged further that he learned that the property in controversy could be purchased and who was the owner of the same, which facts he communicated to P. D. Bowlen; that Bowlen acting for himself and as agent for Wainwright-West Oils, Limited, through the aid of appellee, immediately got into communication with the owners of said oil property and effected a sale of the same to the appellant oil company for the sum of $44,000; that just prior to the purchase of said oil property, appellant, acting for himself and as agent of appellant oil company, "agreed that appellee had performed his services in connection with the purchase of the above described property." Appellee alleged further "upon the return of P. D. Bowlen to Tyler, acting for himself and as agent for the corporation defendant (appellant) advised this plaintiff (appellee) that this deal had been closed with the Great States Oil Company and that these defendants (appellants) were indebted to this plaintiff (appellee) in the sum of $2,200"; that thereafter appellee made demand on said Bowlen for the sum of $2,200, which demand was refused.

Appellants answered by general demurrer, several special exceptions, and general denial.

Trial was to a jury. Appellee was the only witness who testified in the case. In addition to his testimony he introduced an assignment of an oil and gas lease covering the tract of land described in his petition from the Great States Oil Company to appellant Wainwright-West Oils, Limited. At the conclusion of appellee's testimony appellants moved for an instructed verdict, which was overruled by the court. The appellants introduced no testimony but rested their case at the conclusion of the appellee's testimony. Certain special issues were submitted to the jury and were answered favorably to appellee, and judgment was entered for him accordingly. Appellants have appealed to this court.

Appellants by their first three propositions assert that they were entitled to an instructed verdict (1) because appellee alleged a joint contract on the part of appellants and the proof wholly failed to establish same; (2) appellee alleged an express oral contract and his evidence failed to establish same; (3) "appellee based his right to recover against appellants on the allegation that the ten-acre tract of land described in his petition was conveyed by the Great States Oil Company to defendant Wainwright-West, Oils, Ltd., for a consideration of $44,000, he was not entitled to recover anything against either of appellants, because he did not prove or attempt to prove that said tract of land was conveyed to said corporation or to any one else, but did introduce in evidence an instrument purporting to be an assignment of an oil and gas lease covering the land described in his petition."

Appellee alleged in his petition as a part of his contract with appellants that he was to furnish them with information as to the terms and conditions upon which said property could be bought. With respect to this feature of the contract, appellee testified as follows:

"Q. And you testified Mr. Bowlen paid more than he thought he would have to pay for it? A. Yes, sir.

"Q. You didn't know what it could be bought for? A. No.

"Q. Now, it was a part of your contract with Mr. Bowlen according to your testimony to furnish him information as to the price he could buy it? A. I agreed to furnish him information where it might be bought and who from.

"Q. What information were you to furnish? A. What I told you.

"Q. Tell it again. A. To furnish him the information from whom the property might be bought.

"Q. You didn't do that in this case? A. Yes.

"Q. You didn't know who owned it? A. I sent him to the people he bought it from.

"Q. Were you to give him the terms by which it might be bought? A. State the question again.

"Q. Was it a part of your contract with Mr. Bowlen that you were to furnish him the price at which the property should be bought? A. Not necessarily.

"Q. You were to give him rumors that somebody had a piece of property somewhere that he might sell at some price? A. We discussed the price it would be worth while for him to pay.

"Q. I am not asking you that. I asked you if you were to furnish him the terms, prices and conditions on which property might be bought in order to entitle you to a commission. A. I don't recall a specific understanding that I was to furnish him the exact amount.

"Q. Then it is not true, as you allege in your petition, that on or about July 16, 1934, the defendants and plaintiff entered into a verbal contract whereby this plaintiff was to secure information concerning oil-producing property in the East Texas Oil Field that were for sale and the—upon the terms and conditions same could be bought? A. Yes, sir.

"Q. And you didn't do that in this case? A. Insofar as it was possible to entertain that.

"Q. Well, the people who owned it would know that, wouldn't they? A. Sure.

"Q. You didn't know who owned the property or the price for which it would sell? A. I knew Mr. Andrade or the Great States Oil Company.

"Q. Or the Great States Oil Company? A. Or the Great States Oil Company owned the property.

"Q. You did not have any negotiations with Mr. Andrade or any one representing the Great States Oil Company, did you? A. No.

"Q. You didn't know it could be bought at all except by hearsay? A. Yes, sir.

"Q. You didn't talk to the owner? A. No, sir.

"Q. You didn't know what price they would take for it top or bottom? A. No.

"Q. What else did you know about it— you say you knew who it belonged to—what else did you know about it? A. I don't recall any other salient factor."

It is clear from the above testimony that the appellee failed in a material particular to perform the contract alleged by him. He alleged that it was a part of his contract with appellants to furnish to them not only the information concerning the property that might be purchased, but also the price and terms for which same could be purchased. His testimony shows conclusively that he did not furnish to appellants the information concerning the price for which the property could be bought or the terms upon which it could be bought. He testifies himself upon cross-examination that he did not know what price the owners of said property would take for it, "top or bottom." This failure on his part to perform the contract as alleged by him constitutes a material variance between his pleading and proof, which, in our opinion, would require a reversal of the judgment of the lower court. Miller & Biggerstaff v. Burke (Tex.Civ.App.) 228

S.W. 310; Kildow v. Irick (Tex.Civ.App.) 33 S.W. 315. Another case announcing this general rule is Smoot & Smoot v. Nelson (Tex.Civ.App.) 11 S.W.(2d) 578, and cases there cited. Appellee having based his right of recovery solely on an express contract, he can recover only on the contract as alleged and not on an implied contract or quantum meruit. Read v. Farquharson (Tex.Civ.App.) 207 S.W. 335; Vletas v. Stagner (Tex.Civ.App.) 45 S.W.(2d) 1009; Wiley v. Smith (Tex.Civ.App.) 55 S.W. (2d) 879.

With respect to the contention that appellee alleged a joint contract on the part of appellants and that the proof failed to establish a contract with both of the appellants constituted a variance, we do not agree. Had the evidence sufficiently established Bowlen's agency for the corporation with authority to act for it in making the contract, and other facts being sufficient, the jury would have been warranted in finding for appellee and against the corporation, appellant, even though the evidence had been insufficient to establish his contract with Bowlen individually. Kelsey v. Myers (Tex.Civ.App.) 29 S.W.(2d) 855, and cases there cited.

Closely akin to the foregoing propositions is the further contention of appellants that the evidence fails to establish the alleged fact of Bowlen's agency for Wainwright-West Oils, Limited. Relative to this feature of the case, appellee testified on cross-examination:

"Q. Now, you say when Mr. Bowlen talked to you he was acting for himself and for Wainwright-West Oil Company. Now he was not acting for both of them was he? A. I presume he acted for the corporation. He is president.

"Q. You don't know whether he acted individually and for the company—did both of them buy it? A. The property was bought in the name of Wainwright-West Oil Company.

"Q. Mr. Bowlen didn't buy it, did he? A. Not that I know of.

"Q. Then you are mistaken when you say that he was negotiating for himself and for the company. You told Mr. Waldrop he was representing himself and the company. Now which was it? A. I would think he represented both, owing to him being president and owning the majority of the stock and I would suppose he was looking after his interest.

"Q. I am not asking you what you suppose. You brought this suit and you say in your petition he acted for himself and for the company and you told Mr. Waldrop that. Now I want to know if that is still so. A. I had no other basis to go on than that assumption."

This testimony, in our opinion, utterly fails to establish Bowlen's agency for Wainwright-West Oils, Limited, even granting that he was president of same. The person who alleges agency has the burden of proving it. As said by this court in Adkins-Polk Co. v. Pate, 11 S.W.(2d) 654, 656: "The defense was a general denial, which imposed upon the plaintiff in the case the burden of proving the making of a contract which bound the appellant. Corporations can act only through agents, and it is elementary that one who seeks to hold a corporation liable upon a contract made by an agent has the burden of proving, not only the execution of the contract for the corporation, but the authority of the agent through whom it is claimed the corporation acted." It is held in the case of Standard Underground Cable Co. v. Telephone Co. (Tex.Civ.App.) 134 S.W. 429, 433, writ refused: "It is the general rule that the president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property or funds, in the absence of anything in the act of incorporation or the action of the board of directors clothing him with such power. He has without such special authority no more control over the corporate property and funds then has any other director." Citing cases. In his petition appellee alleged that P. D. Bowlen was president of Wainwright-West Oils, Limited, and that in making the contract concerned in this controversy Bowlen was acting as agent for said corporation, and since Bowlen was president of said corporation, he was agent for it. There is no other reason given by appellee. Appellee simply asserts that "I had no other basis to go on than that assumption," meaning thereby, of course, that because Bowlen was president of the oil company he had authority by virtue of his office to bind the corporation. This evidence, in our opinion, is not sufficient to establish the fact of Bowlen's agency and no recovery was warranted against Wainwright-West Oils, Limited.

 Appellants make the further contention that since the contract alleged was for the sale of land, proof of an assignment of an oil and gas lease covering the land would constitute a variance between the allegation and proof. We do not agree with this contention. It has been held, and is now the settled law of this state, that an oil and gas lease covering a tract of land conveys an interest in the land. Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Yates v. State (Tex.Civ.App.) 3 S.W.(2d) 114; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. It is at once apparent, we think, when appellee's petition is considered in its entirety that the contract alleged therein concerned assignments of oil leases or leases on oil-producing property and not the sale of the oil lands in fee.

Numerous other assignments of error are brought forward by appellants which we shall not discuss for the reason we do not think they will occur on another trial.

For the reasons indicated above, the judgment of the trial court is reversed and the cause remanded.